IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA N. GRACIA, | ) |
| | ) |
| Plaintiff, | ) Case No. 16 C 7297 |
| | ) |
| v. | ) Judge John Z. Lee |
| | ) |
| SIGMATRON INTERNATIONAL, INC., | ) |
| GARY FAIRHEAD, and | ) |
| LINDA FRAUENDORFER, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maria N. Gracia has brought this suit against her former employer, SigmaTron International, Inc. ("SigmaTron"), as well as Gary Fairhead and Linda Frauendorfer in their capacity as corporate officers of SigmaTron. Plaintiff's claims arise from statements made by Defendants in disclosures mandated by the Securities and Exchange Commission (SEC). Plaintiff alleges (1) retaliation by SigmaTron in violation of Title VII of the Civil Rights Act of 1964 as amended (Title VII), 42 U.S.C. § 2000e-3(a), and the Illinois Human Rights Act (IHRA), 775 Ill. Comp. Stat. 5/6-101(a); (2) defamation *per se* against all Defendants; and (3) false light invasion of privacy against all Defendants. For the reasons stated herein, the motion [17] is granted in part and denied in part.

**Factual Background**

SigmaTron is a Delaware corporation with its principal place of business in Elk Grove, Illinois. Compl. ¶ 2, ECF No. 1. It manufactures circuit board assemblies. *Id.* ¶ 6. Plaintiff began her employment at SigmaTron in 1999. *Id.* ¶ 5. In 2008, Plaintiff filed a charge of

discrimination against SigmaTron with the Equal Employment Opportunity Commission (EEOC).  *Id.* ¶ 8.  SigmaTron received a copy of this charge on November 19, 2008, and Plaintiff was fired sixteen days later.  *Id.* ¶ 10.

In the litigation that ensued ("*Gracia I*") Plaintiff claimed, *inter alia*, that SigmaTron violated Title VII by terminating her employment in retaliation for filing of the EEOC charge.  *Id.* ¶ 13.  At trial, Greg Fairhead, executive vice president of SigmaTron and the brother of Defendant Gary Fairhead, testified that Plaintiff was fired for intentionally permitting an assembler working under her supervision to use lead-free solder instead of leaded solder and being indifferent when confronted about it.  *Id.* ¶ 14.  For her part, Plaintiff asserts that she did not knowingly allow the assembly line to run, nor did she openly admit that she had done so, but rather she claims she stopped the employee as soon as the error came to her attention.  *Id.* ¶ 31.  On December 18, 2014, a jury returned a verdict in favor of Plaintiff against SigmaTron and, eventually, after several post-trial motions by SigmaTron, the court entered a judgment in Plaintiff's favor in the amount of $374,478.14, which was affirmed on appeal.  *Id.* ¶¶ 16, 21; *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010 (7th Cir. 2016).

SigmaTron is a publicly traded corporation and, therefore, is required to make regular disclosures to the SEC.  Compl. ¶ 2.  From November 2008 to December 2014, while *Gracia I* was being litigated, SigmaTron included language in their quarterly disclosures that the company did not expect the legal proceedings with Plaintiff to have any material adverse impact on share values; it did not refer to the Plaintiff by name.  *Id.* ¶ 24.  However, in a July 2015 filing signed by Fairhead and Frauendorfer, SigmaTron for the first time identified Plaintiff by name, stating, "[o]n December 5, 2008, Ms. Gracia's employment . . . was terminated after she knowingly permitted an assembly line to run leaded boards in a lead-free room with lead-free solder,

contrary to the customer's specifications and prohibited by Company policy. . . . Ms. Gracia openly admitted to permitting this to take place." *Id.*, Ex. E.

The case before this Court (*Gracia II*) arises not from Plaintiff's termination, but from Defendants' SEC disclosures. Plaintiff filed an EEOC charge forming the basis of this complaint on September 2, 2015, asserting SigmaTron had retaliated against her by publishing the above statements regarding her professional competence—which she claims are false—in its SEC disclosures. *Id.* ¶ 36. Plaintiff further alleges that Defendants, after learning of these charges on September 3, 2015, repeated the statements regarding her termination in another SEC disclosure on September 14, 2015, in response to the charges she filed. *Id.* ¶ 39; *id.*, Ex. H.

On November 23, 2015, Plaintiff's counsel sent a cease-and-desist letter to Greenberg Traurig, the law firm that oversees SigmaTron's SEC filings, insisting SigmaTron stop publishing the statements that Plaintiff claims are false, but SigmaTron never responded. *Id.* ¶¶ 42–45. Subsequently, on December 15, 2015, and March 15, 2016, SigmaTron again referenced Plaintiff by name in its SEC disclosures. *Id.* ¶¶ 46, 49.

Plaintiff asserts that SigmaTron's SEC disclosures, as authorized by Fairhead and Frauendorfer, falsely described her actions with regard to the assembly-line events that gave rise to *Gracia I*. Accordingly, Plaintiff claims Defendants defamed her and invaded her privacy by portraying her in a false light, and in doing so, SigmaTron retaliated against her for engaging in activities protected under Title VII and the IHRA.

**Legal Standard**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). Under federal notice pleading standards, "[a] plaintiff's complaint need only provide a short and plain statement of the claim showing that the

pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation marks omitted); *see also* Fed R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] as true all well-pleaded facts alleged, and draw[ ] all possible inference in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

Additionally, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged in the complaint. *Id.* Accordingly, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, the plausibility standard is not akin to a probability requirement but, rather, asks for more than a sheer possibility that a defendant acted unlawfully. *Id.*

## Analysis

**I.   Retaliation**

In Counts I, II, V, VI, IX, X, XIII, XIV, XVII, and XVIII, Plaintiff alleges retaliation in violation of Title VII and the IHRA.[1] Plaintiff alleges SigmaTron included statements in its SEC

---

[1] Defendants make no distinction in their briefing between Plaintiff's Title VII-based claims and IHRA-based claims. The Court's analysis in relation to these claims, therefore, focuses solely on Defendants' Title VII-based arguments. *See, e.g.*, *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (holding that undeveloped arguments are waived). In any event, courts assessing IHRA retaliation claims have adopted the framework used by federal courts in addressing retaliation claims under Title VII. *Marshall v. Family Dollar Stores, Inc.*, No. 11 C 1477, 2012 WL 1117897, at *2 (N.D. Ill. Apr. 3, 2012).

4

filings to retaliate against Plaintiff for vindicating her rights in *Gracia I*. Title VII prohibits, in pertinent part, employers from retaliating against an employee because that individual opposed a practice made unlawful by Title VII or "made a charge, testified, assisted, or participated" in a Title VII investigation, proceeding, or hearing. 42 U.S.C. § 2000e–3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006). To prevail on a retaliation claim, an employee must prove (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the two. *See Williams v. Office of Chief Judge of Cook Cty.*, 839 F.3d 617, 627 (7th Cir. 2016). The parties do not dispute that Plaintiff has satisfied the first element, as her formal EEOC charges are exactly the type of statutorily protected activity contemplated by Title VII. *See Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015). The parties do, however, dispute whether SigmaTron's actions constitute an adverse employment action and whether Plaintiff has alleged a plausible causal link between the two.

### A. Adverse Employment Action

The Supreme Court has interpreted Title VII's requirement of an "adverse employment action" to mean that "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 56. In applying this definition to this case, the parties focus on *Greengrass v. International Monetary Systems*, 776 F.3d 481 (7th Cir. 2015).

In *Greengrass*, the plaintiff filed a complaint with the EEOC after she had quit her job with the defendant. *Id.* at 483. The defendant, a publicly-held company, later submitted a SEC filing disclosing that the plaintiff had filed a sexual harassment complaint with the EEOC and that it considered the claims "meritless." *Id.* at 484. During the course of her lengthy job search,

5

the plaintiff spoke to a recruiter, who told her that she was unemployable based upon the information in the SEC filing. *Id.* at 485. The Seventh Circuit had no trouble finding that the disclosure in a public filing was a materially adverse employment action based on the fact that the information might cause future employers to take a negative view of the employee. *Id.* Accordingly, the court found that "naming EEOC claimants in publicly available SEC filings" could dissuade a reasonable worker from making or supporting a similar claim—"the essence of a materially adverse employment action." *Id.*

Here, SigmaTron tries to distinguish *Greengrass*, arguing that, in that case, the defendant's disclosure made otherwise private information public, while here, Gracia made the information public herself, before the SEC filing, by commencing the lawsuit. This argument is unpersuasive. The *Greengrass* court's conclusion that disclosure of an EEOC claim in a public filing constituted an adverse employment action was based on its concern that the risk of such disclosures could chill workers from bringing such claims. The court's holding was not dependent on whether that information was otherwise available to the public. *See id.* at 485; *see also EEOC v. Day & Zimmerman NPS, Inc.*, No. 15-CV-01416 (VAB), 2016 WL 1449543, at *3 (D. Conn. Apr. 12, 2016) (noting that when an employer disseminates an employee's administrative charge of discrimination to the employee's colleagues, a reasonable factfinder could determine that such conduct constitutes an adverse employment action). What is more, like the public filing in *Greengrass*, SigmaTron's disclosure provided more than a general description of Gracia's claims; it provided SigmaTron's own view of events, going so far as to state that "Ms. Gracia openly admitted" that she had violated company policy.

Accordingly, the Court denies SigmaTron's motion to dismiss on the basis that Plaintiff did not state an adverse employment action.

### B. Causation

The standard for demonstrating causation for a Title VII retaliation claim is whether, considering the evidence as a whole, the defendant took an adverse employment action because the plaintiff had engaged in a protected activity. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *Williams*, 839 F.3d at 627. Factors to consider in this analysis include suspicious timing, ambiguous statements of animus, whether other employees were treated differently, or evidence that the explanation for the adverse action was pretextual. *Greengrass*, 776 F.3d at 486; *see also Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). SigmaTron contends that Plaintiff has not plausibly alleged causation. In doing so, it asserts that (1) its SEC filings were mandated, leaving it no choice but to disclose Gracia's claim, and (2) the temporal gap between her protected activity and its disclosures is too great to support an inference of causation. The Court will analyze each argument in turn.

#### 1. Mandated Disclosure

Defendants argue that if SEC disclosures can serve as the basis of a materially adverse employment action, employers must choose to either comply with 17 C.F.R. § 229.103, which requires disclosure of legal proceedings, or risk being sued for retaliation. At this stage, however, the Court is simply charged with determining whether Plaintiff has pleaded sufficient facts to support a plausible inference that Defendant included the information in the SEC disclosures *because* Plaintiff brought suit and obtained a substantial judgment against SigmaTron. This is precisely what Plaintiff has alleged. Compl. ¶¶ 61, 67, 97, 103, 131, 137, 162, 168, 191, 197. It may well be that SigmaTron may prevail after discovery. But at this preliminary stage, Garcia has done enough to survive a motion to dismiss.

It bears mentioning, however, that SigmaTron did not disclose Plaintiff's name in its disclosures from 2008 to 2015, presumably believing that it was not required to do so under 17 C.F.R. § 229.103. It was only after the jury award in Gracia's favor in July 2015 that SigmaTron began identifying Gracia by name in its public filings. These allegations, taken as a whole, raise a reasonable inference that SigmaTron's actions may have been motived by retaliatory purposes. *See Greengrass*, 776 F.3d at 487 (holding that shifts in policies regarding SEC disclosures could lead a reasonable jury to find that stated SEC compliance was actually a pretext for discriminatory animus).

### 2. Temporal Gap

SigmaTron further asserts that Plaintiff has not alleged a plausible causal link, because Defendant did not include the allegedly retaliatory remarks in the public SEC filing until nearly four years after the Plaintiff had filed her complaint in *Gracia I*. But there is no bright-line rule that determines whether an adverse employment action falls sufficiently "close on the heels" of a protected activity such as to indicate causation; rather, such a determination depends on context. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011)).

In *Greengrass*, the defendant did not become aware of the seriousness of the case until fourteen months after plaintiff had filed her claim with the EEOC. *Greengrass*, 776 F.3d at 486. The court held that a "reasonable jury could find that IMS [defendant] decided to retaliate against her not when she filed her charge, but when IMS saw that the EEOC was taking the charge seriously, and that the retaliation occurred in its next scheduled SEC filing." *Id.* Here, SigmaTron states that it did not consider the matter a material legal proceeding until the district court had denied its post-trial motion resulting in liability for $300,000 in damages, about one-

third of SigmaTron's profits for the year. Def.'s Mot. Dismiss 6, ECF No. 18. If the allegations are taken as true, for over six years, from November 2008 to December 2014, Defendant had not included Plaintiff's name or any information about its views of her claims in its public SEC filings. It was only after the jury returned a verdict and the time post-trial motions were ruled upon in her favor that SigmaTron began publishing such information. This timing is sufficient to support a plausible inference at this stage that SigmaTron included Plaintiff's name and other new information in its SEC filings to retaliate against Plaintiff for her success at trial.

For its part, SigmaTron argues that it did not believe *Gracia I* to be material enough to require the disclosure of Plaintiff's name under 17 C.F.R. § 229.103. This may be so, but such issues of intent are not amenable for resolution at the pleading stage and must be left for a later day. *Hoglund v. Signature Mgmt. Grp., Inc.*, No. 08 C 5634, 2009 WL 1269258, at *2 (N.D. Ill. May 4, 2009) ("[T]he Court declines to stray from the general rule that it is inappropriate to make determinations regarding pretext at the pleading stage."). Accordingly, for all the foregoing reasons, the Court holds that it would be premature to dismiss Plaintiff's claims of retaliation.

## II. Defamation *Per Se*

Counts III, VII, XI, XV, and XIX of Plaintiff's complaint allege that Defendants defamed her *per se*. Under Illinois law, a defamatory statement is one that lowers a person's reputation in the eyes of the community or deters the community from associating with him or her. *Solaia Tech., LLC v. Specialty Publ'g Co.,* 852 N.E.2d 825, 839 (Ill. 2006). Illinois courts recognize five categories of statements that are actionable as defamation *per se*—meaning damages are presumed—but only two are pertinent to this case: (1) those imputing an inability to perform or want of integrity in the discharge of one's duties of office or employment, and (2) those that

9

prejudice a party, or impute lack of ability, in his or her trade, profession, or business. *Bryson v. News Am. Publ'ns, Inc.,* 672 N.E.2d 1207, 1214–15 (Ill. 1996). Plaintiff asserts the statements in the SEC disclosures at issue imputed she is unable to or lacks integrity in performing her employment duties or that she lacks ability in her profession.

Defendants have moved to dismiss Plaintiff's defamation claims on the ground that the statements are capable of an innocent construction. Even if a statement falls into one of the *per se* categories, a claim is not actionable as such if it is reasonably capable of an innocent construction.[2] *Chapski v. Copley Press*, 442 N.E.2d 195, 199 (Ill. 1982). The innocent construction rule requires a court to consider a written or oral statement in context, giving the words and their implication their natural and obvious meaning. *Id.* If, when so construed, a statement may reasonably be interpreted as asserting something other than what is implicated by the *per se* category, it is not actionable *per se*. *Id.* The Illinois Supreme Court has cautioned, "[t]he rigorous standard of the [ ] innocent construction rule favors defendants in *per se* actions in that a nondefamatory interpretation must be adopted *if* it is *reasonable*. The tougher standard is warranted because of the presumption of damages in *per se* actions." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1302 (1996) (internal quotation marks and citation omitted).

For this reason, Illinois courts have been reluctant to find statements by an employer to third parties regarding an employee's past performance in a specific position to be defamatory *per se*. Rather, such statements have been deemed capable of an innocent construction because they can be understood as pertaining to an employer's past performance in a specific position, rather than an employee's general ability to satisfactorily perform in future positions for a different employer. *Id.* at 1302; *Antonacci v. Seyfarth Shaw*, *LLP*, 39 N.E.3d 225, 236 (Ill. App.

---

[2] The question of innocent construction is properly decided by this Court at the motion to dismiss stage. *See Knafel v. Chi. Sun-Times, Inc.*, 413 F.3d 637, 640–41 (7th Cir. 2005).

Ct. 2015). For example, in *Valentine v. North American Co. for Life & Health Insurance*, 328 N.E.2d 265 (Ill. 1974), a secretary of the defendant company told a third party that the plaintiff was being discharged from the company because "he was a lousy agent," he spent too much money on furniture, he did not devote enough time to his work, and he had not done things for the company that he was obligated to do. *Id.* at 266–67. The court held the statements "did not necessarily imply plaintiff's lack of qualifications or skill in his calling," but could be innocently construed to mean plaintiff did not properly or satisfactorily represent the company or that he had a generally unsatisfactory agency relationship. *Id.* Because this did not imply that the plaintiff was unable to perform his duties as an employee or that he was not qualified in his calling, the court held the statements were not defamatory *per se*. *Id.*

Illinois courts have reached the same conclusion in similar cases. *See Anderson*, 667 N.E.2d at 1302 (holding that a defendant conveying to a prospective employer that plaintiff "did not follow up on assignments" and that "she could not get along with coworkers" could be reasonably construed to mean simply that the plaintiff did not fit in with the organization and failed to perform well in that particular job setting, and was not a comment on her ability to perform in other, future positions); *Dunlap v. Alcuin Montessori Sch.*, 698 N.E.2d 574, 577 (Ill. App. Ct. 1998) (finding the statement that events had "'caused virtually a total breakdown of trust and confidence between [plaintiff] and the Board . . . [and] led the Board to conclude that [plaintiff] is not satisfactorily performing her duties or carrying out the policies of the Board'" could be reasonably construed as assessing plaintiff's failure to perform well in the school's particular job setting, as opposed to her inability to perform well in other, future positions); *Gaynor v. Am. Ass'n of Nurse Anesthetists*, No. 1–15–0557, 2015 WL 9594358, at *13 (Ill. App. Ct. Dec. 30, 2015) (holding that statements that Plaintiff failed to recommend or initiate any new

projects, that she had failed at her responsibility for completing a service agreement, and that her written communications were inadequate "in no way would lead a reasonable person to conclude that she was incapable of performing her job" and were therefore capable of an innocent construction.).

In this case, the statement in question read as follows:

> Ms. Gracia's employment . . . was terminated after she knowingly permitted an assembly line to run leaded board in a lead-free room with lead-free solder, contrary to customer's specifications and prohibited by Company policy. The use of lead-free solder for leaded components can lead to devices that fail and significant penalties to the Company from customers and regulatory bodies. The parts were quarantined and were not shipped. Ms. Gracia openly admitted to permitting this to take place.

Compl., Ex. E. Much like the statements in *Valentine* and like cases, this statement reasonably permits the innocent construction that Plaintiff was not excelling in her particular position with SigmaTron on the particular date in question, rather than that she was incapable of doing her job competently or lacked ability in the industry. Alternatively, the disclosure can reasonably be construed as a statement of the company's position in the *Gracia I* litigation, rather than as a statement about Plaintiff's competence or ability.[3] Because Defendants' statements are capable of at least one innocent construction, the Court dismisses Plaintiff's claims of defamation *per se*.

## III. False Light Invasion of Privacy

Plaintiff also asserts in Counts IV, VIII, XII, XVI, and XX that, by publishing the allegedly false statements, Defendants placed her in a public false light. But Illinois courts have

---

[3] Any apparent tension between the Court's analysis of Plaintiff's retaliation and defamation *per se* claims can be explained by the differences in the goals of the two doctrines and the present posture of this case. Interpreting Title VII's anti-retaliation provision broadly ensures accomplishment of the act's primary objective of stopping discrimination in the workplace. *Burlington*, 548 U.S. at 68. Moreover, Plaintiff need only state a plausible retaliation claim at this stage. Conversely, Illinois courts require rigorous application of the innocent construction rule, whereby any reasonable innocent construction must be adopted at this stage. *Anderson*, 667 N.E.2d at 1302.

12

consistently held that when an "unsuccessful defamation *per se* claim is the basis of [a plaintiff's] false-light claim, [the plaintiff's] false-light invasion of privacy claim fails as well." *Madison v. Frazier*, 539 F.3d 646, 659 (7th Cir. 2008); *see Moriarty v. Greene*, 732 N.E.2d 730, 742 (Ill. App. Ct. 2000) (holding that because the court decided statements were not defamatory *per se*, "[t]he same analysis applies to the false light claims"); *see also Seith v. Chi. Sun-Times, Inc.*, 861 N.E.2d 1117, 1130 (Ill. App. Ct. 2007). Accordingly, since this Court has found Defendants' statements are capable of at least one innocent construction, the Court hereby dismisses Plaintiff's claims of false light invasion of privacy as well.[4]

## Conclusion

For the reasons stated herein, Defendants' motion to dismiss [17] is granted in part and denied in part. Counts III, IV, VII, VIII, XI, XII, XV, XVI, XIX, and XX relating to defamation *per se* and false light invasion of privacy are dismissed. Defendants Fairhead and Frauendorfer are therefore dismissed from this case. As to the remaining counts in Plaintiff's complaint—Counts I, II, V, VI, IX, X, XIII, XIV, XVII, and XVIII—Defendants' motion to dismiss is denied.

**IT IS SO ORDERED.**            **ENTERED   3/21/17**

_____
**John Z. Lee**
**United States District Judge**

---

[4]     Because the Court dismisses Plaintiff's defamation *per se* claims and false light invasion of privacy claims for the reasons described, it need not reach the additional issues of whether Defendants' statements are privileged or whether Defendants Fairhead and Frauendorfer can be liable for them.

13